Thank you, Your Honor. For the record, I'm John Minster, and I represent Cynthia Anderson. I should say in my defense that we were originally listed as the sixth and last case on the calendar here. Counsel are expected to be here at the start of the calendar for all cases. That's the protocol, but I understand. Well, I figured if I took this fair, I'd get here at 9-10. If there were six cases ahead of me, I'd probably be in good shape. So that was my reasoning. But wasn't there an amended calendar published? Quite possibly. I didn't see it. What I saw was the sixth case calendar. But in any event, let's proceed to the case. I'd like to reserve five minutes for rebuttal. One of our critical claims in this appeal is that my client was arrested without probable cause. And it is important that she was taken into custody without a warrant or other judicial process. Now, are you talking about the custody when she was handcuffed by her husband or the custody when she was transported to a facility? We contend that she was initially handcuffed by her husband. Her husband, as he explains in his declaration, explains that the handcuffs should not have been kept on. She remained handcuffed, and by order of the deputy chief ratified by the chief, she was put in the police car and taken to Harrison Hospital. So at what point are you saying she was placed into custody as opposed to just being handcuffed by her husband? Her husband handcuffed her and called for Deputy Chief Duncan, who arrived at the scene, followed by Chief Haney. I believe the record shows they took charge of the scene. So the non-husband custody would commence at that point at the latest. In any event, under the Fourth Amendment, the police have limited authority to detain and transport citizens in these circumstances without a court order. The Washington Statute, which I've cited in my brief, requires that the police have probable cause that the person is suffering from a mental disorder and presents an imminent likelihood of serious harm. Not a likelihood or a possibility, but an imminent likelihood of serious harm. Counsel, is it your argument that probable cause is coextensive with the requirements under the law to transport someone based on a mental hole? It's the same concept of probable cause. Normally in the Fourth Amendment, you see probable cause to conclude that the person has committed a crime. Generally under the Fourth Amendment, we look at the overall concept as reasonableness, right? Well, the Fourth Amendment says that there shall be no unreasonable searches and seizures. It says no warrants shall issue without probable cause. So I don't think the concepts of reasonableness and probable cause have been blurred by the Fourth Amendment. It's clear under our case law that probable cause is required for an arrest, and under our case law, this chain of events here wherein she was handcuffed, put in a police car, and taken to the hospital did constitute an arrest. Counsel, let's assume that probable cause is required. The 911 call, Scott testified that he had told the officer that your client had just tried to slash her wrists, and there was a razor present, and why isn't that enough to provide probable cause that she was about to harm herself? It may not turn out to be true, but that's the case in many probable cause situations. You may have probable cause to believe someone committed a crime and then learn that they didn't, but it doesn't undo probable cause. I believe Scott in his declaration denies, and I would repeat, denies telling Deputy Duncan that she slashed her wrists. Let me just look that up. No, try to. Let me just look that up if I could for a second. Counsel, what? Tried to slice, or any similar words, her wrist. So I just. But if you take that out, just take out what Scott says he said or didn't say, what Officer Duncan had reviewed the police report from Max's earlier call, and Officer Duncan had been informed before he went that Cindy was threatening to hurt herself. Just putting aside what Scott might have told him when he got there, why wasn't that enough? Well, I think that's what the problem with this appeal is. The district court took for granted the statements that the police claimed the members of the Anderson family. But we have de novo reviews, so we're looking at it anew. So it doesn't matter whether the district court relied on the wrong thing. We're looking at the record all over again, and looking at those things that are undisputed, the ones that Judge Black just mentioned, and the broken razor on the floor, and the fact that she would not speak to him to explain what the situation might be. Well, going backwards, first of all, she did ask to talk to a lawyer. I don't think you can lock somebody up because they asked for a lawyer. Secondly, the alleged broken razor on the floor, I don't think that takes us anywhere. The Andersons in their declarations, which are in the record, deny making the statements that are attributed to them. And while you review the district court's order on de novo review, it's critical to note that you construe the facts in favor of the non-moving party, namely my side, rather than... Correct, but if we look at the undisputed facts, there are some undisputed facts here. If we look at the undisputed facts and the disputed ones in favor of your client, it seems to me that there still was probable cause of the specified sort. Sorry to interrupt. I think that is the defense position. But to go over this in very summary form, you've got Cindy Anderson as a witness who is denying making any gesture, not trying to harm herself, not threatening to harm herself. You've got her being described as calm and compliant by Officer Duncan when he's there and also described that way by her husband. Her husband saying she shouldn't have stayed in handcuffs. All she does while she's sitting there is ask for a lawyer, which can hardly be grounds to lock somebody up in the mental hospital. Then you've got she is disputing... She disputes in her declaration allegations that were made by defendant Schultz in her report, and time permits me from going into the details there. Two days before, you are correct, there was a 911 call, and the police talked with the DMHP, or designated mental health professional, who determined that she did not, repeat, not qualify for detention. So that's two days before. Judge Rawlinson, I think you mentioned the second call, and that was the son being concerned that the mother was gone, and he didn't know where she was, and her medication was missing. But even if you took that at face value, that would not give probable cause to lock her up in the hospital. Then you've got Scott... Counsel, we don't look at any one fact. Don't we look at everything that the officer knew before the arrest and say, well, was reliance on these facts objectively reasonable? We don't just parse through and look at each fact, do we? Well, I'm going over the facts because the point of my argument is the officers didn't have facts or statements that they could rely on to support the seizure and the arrest taking her to the hospital. Because when you go through the record, the declarations of the witnesses, you will see that what the officer, what officers claim in some of their papers were said by the Andersons are across the board denied by the Andersons. What the district judge... Counsel, giving you that, that Scott's disputed fact, statements to Officer Duncan, and Taylor's disputed statements to Officer Duncan. Let's just take those out. Let's take out the hospital records afterwards, what was learned afterwards. The question is, was there enough this Officer Duncan knew before? I'd like you to focus on that. Why wasn't there enough? He knew about the 911 calls. He knew what had gone on. He knew that the mental health professional had released her, but he knew all the facts that surrounded that, and then what he learned about an attempted suicide. Whether true or not, that's why he went there. Why wasn't that enough? Well, I don't think you can construe the facts that allegedly led to the first 911 call in favor of the moving party. I don't think that gets him anywhere. The fact that where the issue is to take somebody into custody and the mental health professional says, no, she should not be taken into custody, and here we're challenging the taking of her into custody two days later when she hasn't been talked to by the DMHP. But somebody who's unstable, two days is a long time, and the fact that it wasn't appropriate to take her into custody two days earlier, but it does seem appropriate now, if anything suggests an inference that the officers are being careful and not jumping the gun. Well, if you draw inferences in favor of the police, in favor of the moving party, of course what you're saying is true, but you're not supposed to do that. You have to look at an objectively reasonable officer. That's the standard. Not a post hoc did it turn out to be true, but what they reasonably believed. And so what they reasonably believed, it seems to me, is that the situation had escalated. It wasn't that bad two days ago, but now they've received information that whether true or not, they received information that she had tried to harm herself and needed additional assistance. The whole point of this appeal is that these things were not said to the officers and they did not have the basis for reasonable belief to which you refer. Those statements are denied by the Andersons. They say they didn't say them. They say those facts aren't there. The defense position, which of course they want you to accept, is that the police were told all these things, and that my position is, oh, you have to investigate whether the witnesses are being truthful with you or not. That is not at all what I'm arguing in this appeal. What we're arguing in the appeal is that the Andersons did not say these things to the police. The police had motives which are discussed in the depositions and in my brief to say things about Cindy Anderson which weren't true. Lord knows from time to time officers do say things about people that are false. We're saying that based upon the fact that they did not have reasonable grounds, you can't take at face value what they claim the people said because the people denied that it was ever said to them. I understand your position. You have less than a minute remaining. If you'd like to save it for rebuttal, that would be permissible. That's an excellent suggestion. Thank you, Your Honor. Good morning. My name is Mary Ann McConaughey, and I represent all defendant appellees on this appeal. There were a number of other legal issues that were raised on the appeal, but again it seems as if the argument has focused on the Fourth Amendment argument specifically relating to the decision to involuntarily transport Cynthia Anderson. So I will focus on that unless the court has some other questions about issues. Well, as you focus on that, there are a number of things that are disputed, and it does appear that the district court relied on some facts that were disputed. So when we take out of the mix the disputed facts, such as what was said by the Andersons, what are the facts remaining on which to base a reasonable belief that she was going to harm herself? First of all, I take sharp issue with Mr. Munster that the Andersons denied everything and that their version of events is wholly different from the officer's. It is not. We relied in this motion on the deposition testimony of Scott and Cindy Anderson, and that was what was in front of the court, in addition to the other materials that were available and the information that was available to Duncan at the time. Cindy Anderson stated in her deposition that she overheard Scott Anderson telling an officer on the phone that she had just attempted to cut her wrists. She stated that in her deposition. Now, they want to say none of that was true, and they want to take issue with that. What Mr. Anderson said in his deposition was that she made a gesture as if to cut her wrists. Whatever words he used with the officers at the time, the information was conveyed, and it's not denied by the Andersons that she did something with the razor that caused Scott to be concerned enough to handcuff her. Well, Counsel, you can look at that and look at what Officer Duncan was told before he went to the house. Right. And he was told there was an incident. So I believe the focus of the question is there were some disputed facts that the district court relied on. Let me just go through them, and that is both Scott and Taylor's statements to Officer Duncan. After Officer Duncan arrived, they dispute what was said. And then the hospital records made after the arrest, and then the shotgun incident. I mean, that took place before the arrest but wasn't known by the police until after the arrest. Well, you have to just assume, just assume. Let's not argue about those right now, but please come back to it. But assume all of those should not have been considered. Just make that assumption. What facts are we left with? Okay. Let me just briefly point out that there were actually two issues on the Fourth Amendment. One claim was Duncan's decision, and then the completely baseless claim that somehow Susan Schultz, after the fact, tried to keep her in the hospital. And I think the medical records were very pertinent to that, but we haven't talked about that at this point. What he knew, and I think it's important to look at the circumstances of the earlier event two days before. That involved the destruction of property, a large clock, some rambling odd notes that the officers found, a statement made by Cindy Anderson, I'm not going to kill myself today. Two or three officers heard that. She, obviously Max had called, young 16-year-old, when a child is concerned about what his mother might do when he wakes up in the morning and finds that she's gone and her medicines aren't there. I mean, that's powerful evidence for police officers. This is all things that went in the background. Powerful evidence. Here's a young man that is concerned enough about his mother that he's going to call the police. The officers describe, when they get to the home, they describe bizarre conduct. And I think it's inaccurate to suggest that, well, they called the MHP and he said she wasn't committable. They asked her to call the MHP. They looked at the MHP, talked to her. There's no evidence that any of the officers talked to the MHP at that time. Basically, she made that odd statement at the end, you know, you better hold on to your gun, I might use it. I mean, there were a lot of odd circumstances from that event. Now, the officers on that day decided that they didn't believe that they would take her into custody on that day. Two days later, a very credible, well-known witness to the police department, that is a fellow police officer with good standing, a lot of credibility with his fellow officers, calls his co-worker and his chief and his assistant chief, I've just handcuffed my wife, come over here. That's powerful in and of itself. And there's no evidence of any kind of, I mean, again, Scott Anderson is known. He's credible. He stated in his deposition, and again, I think I understand deposition testimonies later, but this is corroborative of how he was behaving at the time. He said in his deposition that when he handcuffed her, he did so because he thought they might get into a physical altercation. She was acting really crazy, and both Scott and Cindy say that they believe it was probably related to this annex that she was taking. She was not her normal self. Now, whatever words were used, I believe that in the context of this situation, Scott made it very clear to his superiors that he was very worried about her. And there's also the story about he, when a fellow officer comes into the room, he finds Scott kneeling in front of his handcuffed wife, and the fellow officer overhears, how about if I cut your wrists? Come on. And then the strange, hostile comment to the son as they're leaving. All of these things show and indicate that this was a situation, nobody really knew what was happening with this woman. None of these people are mental health professionals. They're police officers who have the obligation to try to protect a person who may have a mental disability and represent a risk to himself or others. I mean, that's the standard here. The idea that somehow the probable cause standard in this circumstance is identical to the criminal arrest standard is obviously not correct. This is a Fourth Amendment seizure, we admit that. But it's a seizure for a completely different purpose. And it is a seizure, it's not for criminal prosecution, but to protect. And that is what police officers do. Counsel, may I ask you a little different question? It appears that the district court did not address the state law claims of Mrs. Anderson. Would you agree with that? Not entirely. The court, the state law claims involved false arrest and false imprisonment, and those were addressed. But they also included negligence. Right. Intentional infliction of emotional distress and negligent infliction of emotional distress. So where were those addressed in the district court? Okay. Both, remember, Scott and Cynthia brought separate lawsuits with separate attorneys. Both of them made claims for negligent and intentional infliction of emotional distress. In the briefing, we asked for the dismissal of all claims. And, however, in the heading on the argument related to negligent infliction and intentional infliction of emotional distress, we just said Scott's claims. That was a mistake. But the argument addressed sweeping issues that would affect those claims for both parties. Specifically, our argument was just because you have arguable emotional distress, you also have to show that there is a duty and a breach. But those are different claims. The claims of Scott on intentional infliction of emotional distress would be different than the claims of Cynthia because she was the one who was actually transported. So those claims would not necessarily be the same. But the legal standard is the same. And the legal standard and the point that we made was that in order to just because you have emotional distress, you know, we all have emotional distress or can often have emotional distress in the situation that nobody's liable. You've got to have a duty and a breach. So you come back to there's no duty here that has been breached. Once the police took her into custody, they had a duty to do it in a way that did not involve. That's my point. Right. They had a duty, but it was not breached. But here's the problem. The district court didn't analyze that. I think it did. And it did because when you go back, it did analyze that issue with respect. But, again, the only error, if you look back at my briefing, the only error was in the heading of the argument. It should have said Scott and Cindy's claim. But we're not reviewing your briefing. We're reviewing the district court's decision. The district court's decision was to dismiss all claims. But if the district court didn't analyze the claims, how do we know that the district court considered her claims separately from his claims? Well, again, I'm not looking right now at the district court's decision. I am. Okay. It says Scott's claims all the way throughout it. It does not say when it's resolving the issues. Okay. If that is what the district court did, I don't think it is, but if it is, you as appellate judges can look at the issue independently and ask yourself whether or not there is any reason to say that those claims. I don't see any discussion of the negligence claim, any discussion of the intentional infliction of emotional distress, or any discussion of a negligent infliction of emotional distress at all. I just don't see that analysis. Maybe I'm missing something. Maybe you're absolutely right. Honestly, I did look at this issue and went back and thought, you know, looked at my briefing on it. You could be right. Well, I think the issue is either do you remand it for him to make that decision, or do you look at the issue yourself and say that this can be decided on the information that is there. The standard for negligent inflection of emotional distress is not just, you know, is there emotional distress, but was there some duty, was there a breach? Well, ER 92 does talk about Scott Anderson's negligent and or intentional infliction of emotional distress claims failed as a matter of law. I'm sorry, ER 92, is that the? It's the order, pages 15 and 16, or ER 92 and 93, where these claims are discussed. I'm just saying. And the court does dismiss all claims and enter a final judgment, but there isn't separate reasoning with respect to. Discussion with respect to her claim. Right. Right. And, again, I think the reasoning of the court, and, again, I'm not looking at the reasoning, so I don't know how much it's going into. Honestly, my argument on the negligent and intentional inflection was very short because it's very simple, I mean, from my perspective. In the one case under Washington State law for intentional inflection of emotional distress. There has to be extreme and outrageous conduct, and the court does say that as a matter of law all the events did not rise to that level, so arguably that kind of encompasses her claim. But I'm not sure, even though the facts are somewhat different, very close, but somewhat different. Well, I think the legal standard under Washington State law for negligent as opposed to intentional is the closer question, and the legal standard is you have to have, you've got to show what the duty was and you have to show a breach. And I think our whole underlying discussion here is what was the duty, and in this particular incident we're talking about the Fourth Amendment duty, and we're arguing that there was no breach of that duty. That is what the judge decided on the Fourth Amendment issue. It is the same. The question is, okay, what is the legal tort duty? I don't believe there is a duty that they can articulate and then show a breach to, and I think that that is implicit in the discussion of the other issues. And, again, I think the error probably was mine in simply not putting in Scott and Cindy's claim, you know, in heading on that argument. Did you prepare the proposed order? Typically, you know, in this district, I'm sure I did because we're required to, but obviously the opinion that comes out from the court always addresses things in many, many, many pages. So I can't tell you what, you know, I'm sure it's probably not in the appellate record, but I'm sure I would have done that. So if there, I know my time is about up here. Is there anything else that I can address that would be of assistance? I don't believe so. Thank you. Thank you. I understand I have 53 seconds left. Two, hopefully, very brief points. Counsel, in her remarks, said that we concede this is a Fourth Amendment seizure, but the probable cause standard for criminal cases doesn't apply, or she said words to that effect. I'd invite the Court's attention to page 32 of my brief. What she actually said was that the standard for making a criminal case is not the same as establishing probable cause. I think that's what she was making the point, that it's not coextensive with what you have to prove for a criminal case. Okay. My wife's always telling me I have a bad hearing, so I probably could defer to the Court. I would just point out that, as on page 32 of my brief, the seizure of a mentally ill person for an evaluation is analogous to an arrest that must be supported by a probable cause, and that's the MAG, M-double-A-G, versus Wessler case, 960 FedSecond, 773. Lastly, I invite to the Court's attention, in terms of a similar issue, an allegedly mentally ill person and disputed facts, page 39, the case I cited of Del Castillo versus City and County of San Francisco, 2010, Westlaw, 1838939. This is a case where the police were claiming they went in the house. The guy was totally crazy, red-faced, belligerent, incoherent, having a psychotic break. By contrast, he's saying, hey, I was at my house, I answered the door, the officers immediately rushed in and tackled me, and summary judgment as to probable cause for a mental disorder arrest was denied due to genuine issues of material fact. That's exactly the relief that we're asking for here. Counsel, may I ask you, did you perceive the district court's order as taking care of all of the claims of both Scott and Cindy Anderson, including the state law claims? No, I didn't, and that's why I put in my brief a section pointing out that he didn't address that. Maybe in defense of the district court, Judge Layton was assigned to this case, and he got ill, as you all probably know. So the other judge was brought in about three weeks before our trial date down here, and he issued the order that you are now reviewing. Thank you. Thank you, Counsel. The case just argued is submitted, and we will stand adjourned. Thank you. All rise.
judges: Black, Graber, Rawlinson